UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| LAURA M. DUNCAN )<br>(Social Security No. XXX-XX-7766), )<br>  )<br>            Plaintiff, )<br>  )<br>      v.        )<br>  )<br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security Administration, )<br>  )<br>            Defendant. ) | 3:11-cv-88-RLY-WGH |

**ENTRY ON JUDICIAL REVIEW**

**I.  Statement of the Case**

Laura M. Duncan, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Duncan filed an application for DIB on May 7, 2007, alleging that she became disabled on August 1, 2005. (R. 95-97). The agency denied her application both initially and upon reconsideration. (R. 59-62, 64-66). On August 3, 2009, an Administrative Law Judge ("ALJ") held a hearing, during which Duncan, who was represented by counsel, and a vocational expert testified. (R. 22-56). On August 25, 2009, the ALJ issued his

opinion finding that Duncan was not disabled because she did not have a severe impairment. (R. 15-21). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 1-4). 20 C.F.R. §§ 404.955(a), 404.981. Duncan then filed a Complaint on July 22, 2011, seeking judicial review of the ALJ's decision.

Duncan was born in 1967 and has a high school education. (R. 27, 30). Her past work includes jobs as a teller and loan processor. (R. 50).

## II.  Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); see also *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that

she suffers from a "disability," as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III. The ALJ's Decision

The ALJ's decision included the following findings: (1) Duncan met the insured status for DIB through December 31, 2005 (R. 17); (2) Duncan had not engaged in substantial gainful activity since the alleged onset date (R. 17); and (3) in accordance with 20 C.F.R. § 404.1520, she did not suffer from any severe impairment from her alleged onset date of August 1, 2005, to her date last insured for DIB, December 31, 2005. (R. 21). The ALJ concluded by finding that Duncan was not under a disability. (R. 21).

**IV. Issues**

Plaintiff's brief essentially raises two issues:

**1. Whether Plaintiff's impairment should have been found to be severe.**

In this case, at step two of the five-step sequential evaluation process, the ALJ concluded that Duncan did not suffer from any severe impairment prior to her December 2005 date last insured. An impairment is not severe if it does not significantly limit an individual's ability to do basic work activities. 20 C.F.R. § 404.1521. It is important to remember that it is Duncan's burden at step two to prove that she has a severe impairment. She alleges that there was sufficient evidence in the medical record to support a finding that her interstitial cystitis was a severe impairment during the relevant time period between August 2005 and December 31, 2005. Specifically, Duncan points to a Medical Assessment of Physical Residual Functional Capacity completed by her primary care physician, Corazon Hazlett, M.D., on June 11, 2009. (R. 409). Dr. Hazlett opined in this form that Duncan could stand or walk for two hours and sit for one hour in an eight hour workday, that pain would interfere with her ability to work constantly, and that she would need to miss three or more days of work a month. Dr. Hazlett also opined that Duncan's residual functional capacity had been this limited since 2005. (R. 409). Dr. Hazlett also completed a Interstitial Cystitis Residual Functional Capacity Questionnaire on June 11, 2009, in which she opined that Duncan had this disease and that her impairment had been present since December 2005; that her pain would significantly interfere with her ability to work; that she would frequently have to visit the

4

restroom each hour with no notice; that she was constantly tired; and that pain medications would interfere with her ability to concentrate. (R. 410-13). The ALJ addressed Dr. Hazlett's opinion and decided that it should be "given little weight as such opinion is conjecture or guess and not based upon objective medical evidence." (R. 20). Generally, an opinion of a treating physician such as that provided by Dr. Hazlett in June 2009 is entitled to controlling weight. However, in this instance there is substantial evidence in the record to support the ALJ's decision.

The medical record includes the following evidence surrounding Duncan's treatment for interstitial cystitis during or near the relevant time period:

- Duncan was treated on occasion in 2003 for urinary tract infections. She complained of urinary frequency and abdominal discomfort. (R. 321, 324).

- Duncan presented to Dr. Hazlett for a complete physical on November 22, 2004. There was no reference to abdominal pain or frequent urination, and her abdominal exam was essentially normal. (R. 379-80).

- On May, 5, 2005, Duncan presented to Melissa Reisinger, M.D., for a gynecological exam that was essentially normal. Dr. Reisinger noted that her abdomen was normal. (R. 357).

- On August 30, 2005, Duncan telephoned Dr. Reisinger's office stating that she felt like she had a urinary tract infection but that she could not come in to the office. (R. 297). She complained of lower back and abdominal pain, a low-grade fever, and cloudy urine. She was prescribed an antibiotic. (R. 297).

- On December 5, 2005, Duncan saw Dr. Hazlett with complaints of abdominal and low back pain. (R. 334-35). She admitted urinary frequency and suprapubic pain associated with fatigue; these symptoms had been present for five days. A physical exam and

5

>   urinalysis were unremarkable. (R. 334). Dr. Hazlett's assessment was urinary tract infection vs. kidney stone. (R. 334).

- On January 30, 2006, Duncan was seen by Dr. Hazlett for a follow-up for hypertension. (R. 336-37). The record reveals that she admitted urgency of urination and some abdominal discomfort. (R. 336). However, Dr. Hazlett's exam revealed that her abdomen was nontender and soft. (R. 337).

- On February 21, 2006, Dr. Reisinger's office indicated that Duncan had telephoned with complaints of abdominal pain. It was noted that her urine was clean, but she was still having problems. (R. 297).

- On February 24, 2006, Duncan visited Dr. Reisinger's office with complaints of pressure and discomfort over the lower abdomen. (R. 298). She reported some back pain. She also explained that her lower abdominal area would be irritated for several days, that eventually the discomfort would get better, but that her muscles would remain tender. The record reflected that she had been treated numerous times for urinary tract infections, but her urine tests had come back normal. Duncan reported worsening pain during her period. (R. 298). It was, however, noted that her bowel and bladder habits were normal. On exam, she was tender over her bladder. Duncan was scheduled for an ultrasound and given literature about interstitial cystitis. (R. 298). Records from February 27, 2006, indicate that her ultrasound was normal and that she was scheduled for further testing for interstitial cystitis. (R. 298).

- An April 20, 2006 note from Dr. Reisinger's office indicated that Duncan had tested strongly positive for interstitial cystitis. (R. 339).

These medical records reveal that Duncan had some bladder/urinary tract problems prior to the alleged onset date; that in at least the year leading up to her alleged onset date she apparently had not seen a physician for this type of problem; that she began to have some problems that she addressed with medical providers in August and December 2005; and that her condition continued to be evaluated and was finally diagnosed as interstitial

6

cystitis in the first quarter of 2006.  Based on this treatment record, two state agency physicians concluded that there was insufficient evidence of a severe impairment prior to the expiration of Duncan's insured status for DIB.  (R. 387, 407).  The ALJ reasonably evaluated all of this medical evidence and concurred with the opinions of the two state agency physicians.  While Duncan's interstitial cystitis certainly can be a severe impairment, the ALJ was not obligated to adopt Dr. Hazlett's opinions which were rendered nearly four years after the expiration of Duncan's insured status.  Consequently, the ALJ's step two determination must be affirmed.

> **2.  Whether Plaintiff is entitled to a sentence six remand.**

The court must also determine whether remand is necessary for consideration of "new evidence."  A federal court may not consider new evidence in reviewing the ALJ's decision.  *Rasmussen v. Astrue*, 2007 WL 3326524 at *4 (7th Cir. 2007).  However, the court may remand for an ALJ to consider additional evidence, if such evidence is both new and material, and if there has been shown good cause for the failure to incorporate the evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005).  Evidence is considered "new" if it was not available or in existence at the time of the administrative proceeding.  *Schmidt*, 395 F.3d at 741-42.  The evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had he considered the evidence, meaning that the evidence must be relevant to plaintiff's condition during the relevant time period under consideration by the ALJ.  *Id*.

The "new evidence" Duncan references is an undated letter submitted by Dr. Hazlett that seeks to "clear up" two issues surrounding Dr. Hazlett's treatment of her that were raised by the ALJ in his opinion. (*See* Brief in Support of Complaint at 5-6; Ex. A). First, Dr. Hazlett explained that a reference by the ALJ to the fact that Duncan was "not under apparent distress" was misplaced because Dr. Hazlett was only referring to the fact that Duncan was not in need of any life-saving actions at the time. Dr. Hazlett indicated that this statement did not mean that Duncan was not experiencing pain or in need of further treatment. Dr. Hazlett also sought to explain her medical opinion from June 2009 and explain why Duncan's impairment was severe before the expiration of her insured status in December 2005. Dr. Hazlett noted that it takes some time to confirm a diagnosis of interstitial cystitis; that Duncan was suffering from the disease in December 2005; and that the form from June 2009 confirms that Duncan would not have been able to work as of December 2005 because of interstitial cystitis which causes pain and the need for frequent restroom breaks. This evidence is not new evidence as it is simply a rehashing of previous opinions by Dr. Hazlett. However, even if this letter from Dr. Hazlett is new and material evidence, the Seventh Circuit has indicated that a claimant cannot show "good cause" for late submission of a doctor's opinion that is essentially a doctor's attempt to critique the ALJ's opinion. *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). According to the Court in *Perkins*, allowing doctors to engage in such critiques of an ALJ's decision would "seriously undermine the regularity of the administrative process." *Id*. Because Dr. Hazlett's letter is simply a critique of the ALJ's decision,

8

remand is not necessary for consideration of this evidence.

## V. Conclusion

The ALJ did not deny that Duncan had symptoms of her later diagnosed condition prior to her date last insured, but reasonably determined that she did not meet her burden of providing objective medical evidence that her condition was "significantly limiting" prior to December 31, 2005. Furthermore, Duncan is not entitled to a remand for consideration of "new evidence," as she has failed to demonstrate that the letter submitted by Dr. Hazlett is "new" evidence or that there is "good cause" for belatedly tendering the evidence. The final decision of the Commissioner is, therefore, **AFFIRMED.** Judgment consistent with this entry shall now issue.

**SO ORDERED** this 3rd day of May 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Jesse R. Poag
YOCUM LAW OFFICE
jespoag@msn.com